

# THE ATTORNEY GENERAL
## OF TEXAS

July 9, 1987

JIM MATTOX
ATTORNEY GENERAL

Mr. Fred Toler                             Opinion No.  JM-742
Executive Director
Commission on Law Enforcement             Re:  Whether the Port of Houston
   Officer Standards and Education     Authority    may    employ    armed
1606 Headway Circle, Suite 100            security  officers  who  are  not
Austin, Texas    78754                    commissioned peace officers

Dear Mr. Toler:

You ask whether the Port of Houston Authority may employ armed
security personnel who have not been commissioned as peace officers.
We conclude that the authority may not employ such persons.

The authority, formerly known as the Harris County - Houston Ship
Channel Navigation District, is a "navigation district" organized
pursuant to article XVI, section 59, of the Texas Constitution.  See
generally Attorney General Opinion H-137 (1975) (for a discussion of
the origin and evolution of the authority in the law).  The authority
is a political subdivision of the state.  Guaranty Petroleum Corpora-
tion v. Armstrong, 609 S.W.2d 529, 530 (Tex. 1980); Smith v. Harris
County - Houston Ship Channel Navigation District, 330 S.W.2d 672
(Tex. Civ. App. - Fort Worth 1959, no writ).  The authority derives
its powers at large from the constitution and specifically from the
statutes governing the discharge of its duties.  Attorney General
Opinion Nos. JM-258 (1984); M-171 (1967).  The authority may exercise
either those powers which are expressly delegated to it or are clearly
implied from the express powers.  Tri-City Fresh Water Supply District
No. 2 of Harris County v. Manor, 142 S.W.2d 945, 946 (Tex. 1940);
Lower Nueces River Water Supply District v. Cartwright, 274 S.W.2d
199, 207 (Tex. Civ. App. - San Antonio 1954, writ ref'd n.r.e.).
Implied powers are those that are "indispensable to the accomplishment
of the purpose" for which the political subdivision was created;
powers "merely convenient" or "useful" cannot be implied and may not
be assumed by the subdivision.  Tri-City Freshwater Supply District
No. 2 of Harris County, supra, at 946.  (Emphasis added).

Several chapters of the Water Code furnish the authority with the
express powers necessary to fulfill its constitutional mandate.  As an
article XVI, section 59, navigation district, the authority operates
under  chapter  60  (navigation  district  -  general  provisions)  and
chapter 62 (article XVI, section 59, navigation districts - specific

p. 3452

duties and powers).  Additionally, because the authority originally was organized pursuant to article III, section 52, of the constitution before conversion to its present constitutional status, it retains certain of the specified powers granted to navigation districts of that ilk in chapter 61 of the Water Code.  Water Code §§60.246.

A survey of the Water Code demonstrates that the authority has broad express powers to arrange for the conduct of its vital business. Several provisions in the Water Code specifically authorize the authority to hire employees capable of performing a wide range of duties in the ordinary course of its business.  See, e.g., Water Code §§61.174(a) (a navigation district may employ all persons necessary for the construction, maintenance, operation, and development of the business and facilities of the district); 62.077a (the navigation district may employ an assistant engineer and other employees as may be necessary); see, e.g., Attorney General Opinion O-4140 (1941) (authority may contract for medical personnel to provide for the medical care of its employees.)

The deployment of an armed security force composed exclusively of persons who are not commissioned, certified peace officers stands on an entirely different footing.  Although the use of such employees may be exceedingly convenient, mere convenience is not a permissible factor in the calculus of fixing the implied powers of a political subdivision.  Tri-City Fresh Water Supply District No. 2 of Harris County v. Manor, supra, at 946.

The Water Code grants the authority general rulemaking power to protect its property and persons using that property, when the facilities are not within the boundaries of an incorporated city, town, or village:

> The commission of a district which owns, operates, and maintains wharves, docks, piers, sheds, warehouses, and other similar terminal facilities which are not located inside the boundaries of any incorporated city, town, or village may pass, amend, and repeal any ordinance, rule, or police regulation which is not contrary to the constitution or laws of this state and which is necessary to protect the property and to promote the health, safety, and general welfare of persons using the property.[1]  (Emphasis added).

---

1. We take no position on the exact reach of this provision in the case of the Port of Houston Authority, because we have no way of knowing which of the authority's facilities are outside incorporated municipalities.

Water Code §60.071.  Moreover, the authority has very specific powers to carry out section 60.071:

> To accomplish the purposes stated in Section 60.071 of this code, the commission may exercise the following powers:
>
> (1) control the operation of all types of vehicles using the roads maintained by the district, other than roads dedicated to public use by formal dedication, and prescribe the speed, lighting, and other requirements of these vehicles;
>
> (2) prohibit loitering on docks, wharves, piers, warehouses, sheds, or other properties of the district;
>
> (3) control the operation of all types of vessels using harbors, turning basins, basins, or navigable channels of the district and prescribe the speed, lighting, and other requirements of these vessels;
>
> (4) prohibit smoking and the use of flares, open fires, and inflammable, highly combustible, or explosive substances and materials on docks, wharves, piers, warehouses, sheds, and other properties of the district, or on those parts of the properties and at those times or during those periods as may, in the judgment of the commission, be determined to be dangerous to any of the property or inimical to the safety or general welfare of persons using the property or parts of it;
>
> (5) prevent on any of the property all trespasses, breaches of the peace and good order, assaults and batteries, fighting, quarrels, use of abusive, profane, or insulting language, disorderly conduct, and misdemeanor theft and punish offenders;
>
> (6) suppress and prevent any riot, affray, disturbance, or disorderly assembly on any of the property; and
>
> (7) license and regulate or suppress and prevent hawkers and peddlers utilizing or

> attempting to utilize the roads and other property of the district.

Water Code §60.072.  See also §60.073.

The statutes clearly direct the authority to use commissioned, certified peace officers to protect the interests of the authority in enforcing the law within its precincts:

> In prosecutions involving the enforcement of [the relevant provisions of the Water Code] or the enforcement of any ordinance, rule, or regulation of the district, any sheriff, constable, or other duly constituted peace officer of the state of Texas or any peace officer employed or appointed by the [navigation district] may make arrests, serve criminal warrants, subpoenas, or writs, and perform any other service or duty which may be performed by a sheriff, constable or other duly constituted peace officer of the State of Texas in enforcing other laws of this state.

Water Code §60.077.  This provision of the Water Code clearly empowers a navigation district to employ commissioned, certified peace officers.  Attorney General Opinion H-549 (1977).  Thus, the law enforcement activities of the authority, including measures necessary to assure the security of the authority's property and that of its customers, can be discharged by authority employees who are the legal and functional equivalents of duly constituted peace officers.

Security guards are not the legal and functional equivalent of duly constituted peace officers.  Peace officers must be certified by the state, article 4413(19aa), V.T.C.S., after meeting stringent educational, character, and fitness requirements, and they have a specific duty to preserve the peace within their jurisdictions.  Code Crim. Proc. arts. 2.12, 2.13.  Peace officers are vested with a privileged authority to make arrests, see article 14.03 of the Code of Criminal Procedure, and to possess handguns in a wide range of circumstances where such implements are denied to everyone else, see sections 46.02 and 46.03 of the Penal Code.

By contrast, security guards are agents of the sovereign for "law enforcement" purposes to an extent no greater than a loyal citizen or mere bystander.  They may not make arrests, except in the limited circumstances ordinary persons can.  Code Crim. Proc. art. 14.01(a) (any person may arrest an offender when the offense is committed "in . . . view or presence" and is classified as a felony or an offense against the public peace).  Security guards may not serve warrants or issue citations for misdemeanor offenses, or perform any

of the other law enforcement functions of a commissioned, certified peace officer.[2]  Water Code art. 60.077, _supra_.  Security guards may not be armed, except in an extremely limited set of circumstances, and they may not take their weapons off of the property of their employer. Penal Code §46.03(2); Attorney General Opinion H-185 (1973); _see also_ _Robinson v. State_, 280 S.W. 776 (Tex. Crim. App. 1926).  We note that a brief submitted on behalf of the authority argues that in Attorney General Opinion H-549 this office approved the hiring of security guards by the authority.  The question was never raised directly, and that opinion only considered the general circumstances in which any security guard could carry a handgun.

Thus, the broad law enforcement powers granted to commissioned, certified peace officers  employed by the authority, but unavailable to security guards, indicates that the legislature intended for law enforcement activities necessary to the operation of the authority to be exercised by commissioned, certified peace officers.  To find implied power for the authority to hire security guards is an impermissible enlargement of the express powers of the authority.

## S U M M A R Y

The Port of Houston Authority, a navigation district organized under article XVI, section 59, of the Texas Constitution, has no authority to hire armed security guards.  Rather, the legislature specifies that law enforcement activities on the authority's property, and necessary to its functions, are to be carried out by commissioned peace officers, who are to act with all of the authority of a commissioned peace officer, such as a county sheriff or constable.  Water Code §60.077.

---

2.  Because the authority is a political subdivision, security guards employed by it need not be licensed under the terms of the Private Investigators and Private Security Agencies Act.  See V.T.C.S. art. 4413(29bb), §3(a)(2).  A political subdivision may seek licensing for security guards if it chooses.  V.T.C.S. art. 4413(29bb), §3(e). Licensing adds nothing to the power of security guards -- it does not convert them into the functional or legal equivalent of duly constituted peace officers.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Donald Bustion
Assistant Attorney General